## Missouri, Kansas, and Texas Railway Company v. Kansas Pacific Railway Company.

1. Subject to certain reservations and exceptions, the act of Congress of July 1, 1862 (12 Stat. 489), " to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military, and other purposes," passed to the companies therein named a present interest in every odd-numbered section of public land, within specified limits, on each side of the lines of their respective roads. When those lines were definitely established, the title of the companies acquired precision, and became attached to such sections.

2. Said act having been amended by that of July 2, 1864 (13 Stat. 356), by substituting words of larger import, the grant must be treated as if it had been thus made originally; and therefore, as against the United States, the title of the companies to the increased quantity of land must be considered as taking effect July 1, 1862.

3. The company now known as the Kansas Pacific Railway Company was one of the companies mentioned in said acts. By the act of July 3, 1866 (14 Stat. 79), it was authorized to designate the general route of its road, and to file a map thereof at any time before Dec. 1, 1866: *Provided*, that, after the filing of the map, the lands along its entire line, so far as designated, should be reserved from sale by the Secretary of the Interior. Within the specified time, the company filed a map designating as such general route a line from Fort Riley to the western boundary of Kansas, by way of the Smoky Hill River. The lands upon this route, embracing, among others, those now in controversy, were accordingly withdrawn from sale; and, in January, 1867, the road was completed for twenty-five miles, approved by the commissioners appointed to examine it, and accepted by the President. *Held*, 1. That the title of the company attaching to those lands by the location of the road, followed by the construction thereof, took effect, by relation, as of the date of the said act of 1862, so as to cut off all intervening claimants, except in the cases where reservations were specially made in it and the amendatory act of 1864. 2. That such reservations operated as limitations upon the grant.

4. It was not within the language or intention of those acts to except from their operation any portion of the odd-numbered sections within the limits specified in either act, for the purpose of thereafter granting them to aid in the construction of other roads.

5. The claim of the Missouri, Kansas, and Texas Railway Company to the lands in controversy arises under the act of July 26, 1866 (14 Stat. 289), under which the route of its road was designated, a map thereof filed, and the road constructed. At that date, the title to the lands along that route, which were covered by the previous grant to the Kansas Pacific Railway Company, had already passed from the United States.

6. Although the rights of said companies are determined by the date of their respective grants, it appears that the location of the Kansas Pacific was earlier than that of the Missouri, Kansas, and Texas road.

Error to the Supreme Court of the State of Kansas.

The facts are sufficiently stated in the opinion of the court.

*Mr. T. C. Sears* and *Mr. Wheeler H. Peckham* for the plaintiff in error.

*Mr. John P. Usher* and *Mr. Henry Beard, contra.*

Mr. Justice Field delivered the opinion of the court.

This case involves a determination of the title to about ninety thousand acres of land situated in the State of Kansas, claimed by the two railway corporations which are parties to the suit, under grants from the United States. The plaintiff in the court below, the defendant in error here, the Kansas Pacific Railway Company, was originally known as the Leavenworth, Pawnee, and Western Railroad Company, and is thus designated in the act of Congress of 1862. Subsequently, in 1864, the name was changed to that of the Union Pacific Railroad Company, Eastern Division; and it was afterwards so called in the legislation of Congress until some time in 1869, when it received its present name. 13 Stat. 361; 14 id. 79, 355; 15 id. 348.

The defendant in the court below, the plaintiff in error here, the Missouri, Kansas, and Texas Railway Company, claims the lands under a grant from the United States to the State of Kansas, and by patent from the latter. Both grants were made to aid in the construction of railroads the lines of which were not definitely fixed. In neither of them was there any designation of the lands granted other than that they were to constitute the odd sections within certain specified distances on each side of the roads when located. It becomes essential, therefore, for a proper determination of the rights of the two companies, to consider the terms of their respective grants, and ascertain the time when the title to the lands claimed passed from the government.

The plaintiff, the Kansas Pacific Railway Company, claims under the act passed on the 1st of July, 1862, in aid of the construction of a railroad and a telegraph line from the Missouri River to the Pacific Ocean, and the several acts amendatory thereof or supplementary thereto. That act granted to the company organized under its provisions, for every mile of

road, five sections of public land, designated by odd numbers, on each side of the line of the road, within the limit of ten miles, which were not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim had not attached at the time the line was definitely fixed. It also provided that whenever the company had completed forty consecutive miles of any portion of its road or telegraph line ready for the service contemplated, the President of the United States should appoint three commissioners to examine the same, and report whether the road and the telegraph line were completed and equipped as required by the act; and upon a favorable report, patents were to issue for the adjacent lands.

The company was required to file in the Department of the Interior its assent to the act within one year after its passage, and to designate the general route of its road as near as might be, and file a map of the same in that department within two years. The Secretary of the Interior was then to withdraw the lands within fifteen miles of the designated route from pre-emption, private entry, and sale; and when any portion of the route was finally located, he was to cause the lands granted to be surveyed and set off as fast as necessary for the purposes mentioned. The President was to designate the initial point of the road, which was to be in the Territory of Nebraska, on the one hundredth meridian west from Greenwich, at which point the eastern branches were to unite. The act contemplated several branches, one of which was to be constructed by the Leavenworth, Pawnee, and Western Railroad Company, the name of which was, as already stated, afterwards changed to that of the Kansas Pacific Railway Company. It authorized this company, which was incorporated by the State of Kansas, to construct a railroad and a telegraph line from the Missouri River at the mouth of the Kansas River, on the south side thereof, so as to connect with the Pacific Railroad of Missouri at the initial point named, upon the same conditions in all respects as were provided for the construction of the main road and line. In case the general route of the main road was located so as to require a departure northwardly from the proposed line of the Kansas

road before it reached the meridian of longitude mentioned, the location of the Kansas road was to be made to conform to it. The route in Kansas, west of the meridian of Fort Riley to the point mentioned on the one hundredth meridian of longitude, was to be made subject to the approval of the President of the United States, and to be determined by him on actual survey.

Under this act, the plaintiff, on the 17th of July, 1862, filed a map showing the general route of its road; and lands within the limit of fifteen miles on each side of it were accordingly withdrawn from sale. This route extended along the Kansas River, from its mouth to the Republican River, and thence along the left bank of the latter to the one hundredth meridian.

On the 2d of July, 1864, Congress passed an amendatory act, enlarging its grant of land to the Union Pacific Railroad Company, and the companies authorized to connect with its road, and the limits within which the lands were to be reserved; and extending for one year the time for designating the general routes of their respective roads, and providing for the issue to the companies of patents for the lands whenever twenty consecutive miles of their respective roads were found upon the report of the commissioners to be completed. It also authorized the plaintiff to construct its road and telegraph line so as to connect with the Union Pacific road at a point west of its initial point, in case it deemed such westward connection more practicable or desirable. Under this amendatory act the plaintiff filed a map designating the general route of its road west of Fort Riley up the Republican River; but this route was never approved by the President, as required by the original act of 1862; and no withdrawal of lands along this proposed route was made, other than that of July, 1862; and of the lands then withdrawn west of Fort Riley only such are claimed by the plaintiff as were included in the subsequent withdrawal under the act of 1866.

On the 3d of July, 1866, Congress passed a special act authorizing the plaintiff to designate the general route of its road, and to file a map thereof, at any time before the 1st of December, 1866, and providing that after the filing of this map

the lands along its entire line, so far as it was designated,
should be reserved from sale by the Secretary of the Interior.
It also declared that the company should connect its lines of
road and telegraph with the Union Pacific road, at a point not
more than fifty miles westwardly from the meridian of Denver,
in Colorado.   Under this act the plaintiff, on the 11th of July,
1866, filed a map in the Department of the Interior, designating
as the general route of its road a line from Fort Riley to the
western line of the State, by way of the Smoky Hill River,
instead of the Republican River; and on the 26th of the same
month the lands upon this route were withdrawn from sale, by
order of the Secretary of the Interior.   The lands thus with-
drawn embrace those in controversy in this case.   Previously
to this the road of the company had been completed as far as
Fort Riley; and by the 14th of December following (1866),
twenty miles west of Fort Riley, and on the Smoky Hill route,
were also completed.   Upon the presentation of an affidavit of
this fact, the President appointed commissioners to examine
and report upon the road.   Before they made their examina-
tion, a section of five additional miles of the road had been
completed, and they were directed to include it in their
examination.   On the 17th of January, 1867, they reported
to the Secretary of the Interior that the twenty-five miles
were ready for service, and were completed and equipped as
a first-class road.   On the 22d of that month, the Secretary
informed the President of the report, and recommended its
acceptance, and the issue of patents for the lands due the
company on account of this completed portion of the road;
and on the same day the President approved the report, and
directed that patents be issued as recommended by the Sec-
retary.

Upon this order and the legislation we have stated, and the
proceedings had under it, the plaintiff bases its right to the
lands in controversy, and a consequent affirmance of the deci-
sion of the court below.

Briefly stated, the case of the plaintiff is this: In 1862,
Congress granted to it certain lands consisting of odd sections
along a railroad to be afterwards constructed; in 1864, Congress
enlarged the grant, and by subsequent legislation authorized the

route of the road to be designated at any time before December, 1866; when designated, lands within a limit sufficiently extended to embrace the granted sections were to be reserved from sale; and when certain portions of the road were from time to time completed, and were accepted by the President as a first-class road, patents for the sections were to be issued to the company. The plaintiff designated the route of its road in July, 1866, and the lands in controversy were, on the 26th of that month, reserved from sale. By the 14th of December following, it had completed twenty miles of its road, and by the 16th of January, 1867, five additional miles. Commissioners were appointed by the President to examine and report as to the completion and equipment of the road; and upon their favorable report this section of twenty-five miles was accepted by him, and a patent for the lands was ordered to be issued. The plaintiff, therefore, claims that it acquired a title to the lands, and has a right to the evidence of it. And this claim is clearly well founded, unless there be something impairing its validity in the legislation and proceedings under which the defendant asserts title to the lands.

As between the United States and the plaintiff, the right of the latter to a patent became perfect on the approval by the President of the report of the commissioners. The act of July 1, 1862, passed to the company a present interest in the lands to be designated within the limits there specified. Its language is, "that there be and is hereby granted" to it the odd sections mentioned, — words which import a grant *in præsenti* and not one *in futuro*, or the promise of a grant. Similar terms in other acts of Congress granting lands have uniformly received this interpretation, unless accompanied with clauses restraining their operation. They were so interpreted in *Schulenberg* v. *Harriman*, after full consideration of previous adjudications on their import; and the ruling there was followed in *Leavenworth, Lawrence, & Galveston Railroad Co.* v. *United States*, 92 U. S. 733. It is true that the route of the road, in this case as in those cases, to aid in the construction of which the act was passed, was to be afterwards designated; and until designated the title could not attach to any specific tracts. The grant was of sections to be afterwards located,

and their location depended upon the route to be established; when that was settled, the location became certain, and the title that was previously imperfect acquired precision and attached to the lands.

It is always to be borne in mind, in construing a congressional grant, that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of Congress. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties. To the validity of such transfers it may be admitted that there must exist a present power of identification of the land; and that where no such power exists, instruments, with words of present grant, are operative, if at all, only as contracts to convey. But the rules of the common law must yield in this, as in all other cases, to the legislative will.

As to the intent of Congress in the grant to the plaintiff there can be no reasonable doubt. It was to aid in the construction of the road by a gift of lands along its route, without reservation of rights, except such as were specifically mentioned, the location of the route being left within certain general limits to the action of the plaintiff. When the location was made and the sections granted ascertained, the title of the plaintiff took effect by relation as of the date of the act, except as to the reservations mentioned; the act having the same operation upon the sections as if they had been specifically described in it. It is true that the act of 1864 enlarged the grant of 1862; but this was done, not by words of a new and an additional grant, but by a change of words in the original act, substituting for those there used words of larger import. This mode was evidently adopted that the grant might be treated as if thus made originally; and therefore, as against the United States, the title of the plaintiff to the enlarged quantity, with the exceptions stated, must be considered as taking effect equally with the title to the less quantity as of the date of the first act. *United States* v. *Burlington & Missouri Railroad Co.*, 4 Dill. 305.

The construction thus given to the grant in this case is, of

course, applicable to all similar congressional grants, and there is a vast number of them; and it will tend, we think, to prevent controversies between the grantees and those claiming under them respecting the title to the lands covered by their several grants, and put an end to struggles to encroach upon the rights of others by securing an earlier location.   Our judgment is that the title of the plaintiff, attaching to the lands in controversy by a location of the route of the road, being followed by a construction of the road, took effect by relation as of the date of the act of 1862, so as to cut off all intervening claimants except in the cases where reservations were specially made in that act, and the amendatory act of 1864.   Such reservations operated as limitations upon the grant.   The limitation upon the grant in the act of July, 1862, extended to lands sold, reserved, or otherwise disposed of by the United States, or to which a pre-emption or homestead claim had attached, and to mineral lands.   The amendatory act of July, 1864, declared that neither that nor the original act should defeat or impair any pre-emption, homestead, swamp land, or other lawful claim, or include reservations or mineral lands other than those of iron or coal.

As the sections mentioned could only be known when the route of the road was established, which might not be for years, the government did not intend to withhold the lands in the mean time from occupation and sale, and thus retard the settlement of the country, nor to exclude the lands from appropriation to public uses.   And the object of the reservation was to protect the acquisition of rights in this way to lands falling within the limits of the grant, and to exclude from its operation lands specially reserved, and lands of a special character, such as mineral lands other than those of iron or coal, the sale of which was seldom permitted anywhere, and swamp lands.   The grant made was in the nature of a float, and the reservations excluded only specific tracts to which certain interests had attached before the grant had become definite, or which had been specially withheld from sale for public uses, and tracts having a peculiar character, such as swamp lands, or mineral lands the sale of which was then against the general policy of the government.   It was not

within its language or purpose to except from its operation any portion of the designated lands for the purpose of aiding in the construction of other roads.

The claim of title to the lands in controversy made by the defendant in the court below, the plaintiff in error here, the Missouri, Kansas, and Texas Railway Company, arises in this wise: On the 3d of March, 1863, Congress passed an act granting lands to the State of Kansas to aid in the construction of certain railroads, one of which was to extend from the city of Atchison *via* Topeka, the capital of the State, to its western line in the direction of Fort Union and Santa Fé, New Mexico, with a branch down the Neosho Valley to a point where the Leavenworth and Lawrence road entered it. In accepting the act in February, 1864, the legislature of Kansas enacted that if Congress, before the 4th of March, 1866, should consent that the Neosho Valley branch of the road be extended so as to intersect the Union Pacific road, eastern division, at or near Fort Riley, and should make a grant of lands for such extension of like amount with that granted per mile for the construction of the main road, then the Atchison, Topeka, and Santa Fé Railroad Company should proceed to construct such branch. The act thus suggested Congress did not pass; but on the 1st of July, 1864, it did pass an act making an additional grant of land for the construction of a railroad and a telegraph line from Emporia, *via* Council Grove, to a point near Fort Riley, on the branch of the Union Pacific Railroad. The grant was subject to all the provisions, restrictions, limitations, and conditions in regard to the selection and location of the lands, and otherwise, of the act of March 3, 1863, 13 Stat. 339. Afterwards, the Atchison, Topeka, and Santa Fé Railroad Company, with the assent of the State, transferred all its interest in the grant to the defendant in this case, the Missouri, Kansas, and Texas Railway Company, — a company which was originally known as the Union Pacific Railroad Company, Southern Branch, and is so designated in the act of July 26, 1866, which we shall presently consider. This act of 1864 was never accepted by the State of Kansas. No route of a road between the points designated in it was ever located by the company, nor was any map of a proposed route ever

filed in the Department of the Interior. Nothing, indeed, was done by the State or company under the act until after the grant it offered had been superseded by the acceptance of the greater and more valuable grant made by the subsequent act of July 26, 1866, which covered the same lands. 14 Stat. 289. This last act granted to the State of Kansas, for the purpose of aiding the company to construct and operate a railroad from Fort Riley, or near that military reservation, down the valley. of the Neosho River, to the southern line of the State, five alternate sections of land per mile on each side of the road, with a clause that in case it should appear, among other things, when the line of the road was definitely fixed, that any section or part of a section granted had been reserved by the United States for any purpose whatever, then an equal amount of land was to be selected from the public lands nearest the section, and with a proviso excepting from the operation of the act all lands previously reserved to the United States by act of Congress or other competent authority, for the purpose of aiding in any object of internal improvement.

The grant thus made was accepted by the company in August, 1866, and its acceptance was filed in the Department of the Interior. In September following, the line of the proposed road was surveyed, and a map of its route prepared; in November, 1866, it was filed in the office of the Secretary of State of Kansas, and in December following in the office of the Secretary of the Interior. In March, 1867, the adjacent lands were withdrawn from sale to meet the grant, and in June, 1870, the road of the company was completed to the southern line of the State, and soon afterwards was accepted as a first-class road by the governor of the State and by the President.

Upon the principle already announced, in considering the time when the grant to the plaintiff took effect, the title of the defendant to the lands thus set apart to it, had there been no previous disposition or reservation of them, would have become perfect, and by relation have vested from the date of the act. But so far as the lands were identical with those covered by the previous grant to the plaintiff by the acts of 1862 and

1864, the title could not attach, as it had already passed from the government.

The rights of the contesting corporations to the disputed tracts are determined by the dates of their respective grants, and not by the dates of the location of the routes of their respective roads, although in this case the location of the route of the plaintiff's road was earlier than that of the defendant's road. This consideration disposes of the case, and requires the affirmance of the decree of the Supreme Court of Kansas, without reference to the reservations contained in the grant to the defendant.

*Decree affirmed.*