## WHITNEY & Another *v.* MORROW.

IN ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

Argued December 2, 1884.—Decided January 5, 1885.

When an act of Congress, confirming a claim to land, contains a proviso that the confirmation shall not include lands occupied by the United States for military purposes, it is incumbent upon óne claiming the land by patent from the United States, later than the act, to show that the land claimed was occupied for military purposes.

A direct legislative grant of public lands is the highest muniment of title, and is not strengthened by a subsequent patent of the same land.

The facts which make the case are stated in the opinion of the court.

*Mr. Enoch Totten,* for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Field delivered the opinion of the court.

This case was before this court at the October term of 1877. 95 U. S. 551. It is an action of ejectment for the possession of a tract of land consisting of ninety-four acres and a fraction of an acre, situated in the borough of Fort Howard, in Brown County, Wisconsin. The plaintiffs derived their title to the premises from one Pierre Grignon, to whom, on June 2, 1870, a patent was issued by the United States. The defendant, in his answer, sets up an adverse possession of the land in himself and those through whom he derived his interest, for more than forty years, under a claim of title, exclusive of any other right, founded upon a written instrument as a conveyance of the premises. It was admitted that he was in the possession of the land at the commencement of the action, and on the trial he relied, not only upon his adverse possession, but also upon a legislative confirmation of a claim to it, under the act of February 21, 1823, by Alexis Gardapier, from whom he traced his title. It appeared on that trial that commissioners under the act, which revived and continued in force certain previous acts for the adjustment of land claims in the Territory of Michigan—

which then included Wisconsin—had confirmed a claim to land presented by said Gardapier and one presented by Pierre Grignon. The confirmations were subject to the condition that the tracts confirmed did not interfere with certain previous confirmations. On April 17, 1828, Congress confirmed the acts of the commissioners respecting these claims, that is, "confirmed the confirmations," with a proviso, however, that they should not be so construed as to extend to any lands occupied by the United States for military purposes. The act also made it the duty of the register of the land office at Detroit to issue to the claimants certificates, upon which patents were to be granted by the Commissioner of the General Land Office. But it did not appear on the trial that any patent had ever been issued to Gardapier. The court held that if, at the time of the confirmation, the land claimed by him was not occupied by the United States for military purposes, it operated to vest in him a perfect title to the land, a legislative confirmation always operating, unless accompanied with reservations, as a conveyance of the estate or right of the government, to the party who is in possession of the premises or has an interest in them.

The tract confirmed appeared to have clearly defined boundaries, or, at least, such as were capable of identification. The question, therefore, whether the land was thus occupied was of the utmost consequence, and the defendant offered, in various forms, to prove, by witnesses produced for that purpose, that it was not thus occupied on the confirmation by Congress and had not been previously; and also that for a period of nearly forty years the land had been in the actual, open, notorious, and exclusive possession of Gardapier and parties claiming under him, and that during that time it had been cultivated, improved, and built upon without objection from any one. But the court refused to admit the proof, and also refused an instruction to the jury, which was requested, that, in order to find for the plaintiff, they must be satisfied that the land was occupied for military purposes on April 17, 1828, or was reserved for military purposes at that time, or was treated by the government as thus reserved.

The plaintiff recovered, but for the error in this ruling and

refusal, this court reversed the judgment and ordered a new trial.

On the second trial, the judgment in which is now before us for review, no proof was offered of the military occupation, the plaintiffs relying upon the patent to Grignon, and the defendant upon the legislative confirmation of the claim to Gardapier, which operated to perfect his title to the tract named, including the premises in controversy, if it were not excepted by its occupation by the United States for military purposes. Such an exception, if it existed, should have been established by the plaintiffs, whose right to the premises depended upon its existence. If the land was thus occupied, the confirmation did not apply, and it remained public property. That which was essential to the plaintiff's recovery was not, therefore, established, nor was any evidence offered for that purpose. The confirmation to Gardapier and the title which followed to the tract designated stood unquestioned, and justified the direction given to the jury that they should find for the defendant.

It would seem that the plaintiffs offered a patent to Gardapier, also issued in 1870, and that its admission was refused. We cannot see what bearing it may have had, as a copy of it is not contained nor are its contents stated in the record. It could not deprive the confirmee of the land confirmed to him by the act of Congress if that was by specific boundaries, distinguishing and separating it from other parcels, or was capable of identification. If, by a legislative declaration, a specific tract is confirmed to any one his title is not strengthened by a subsequent patent from the government. That instrument may be of great service to him in proving his title, if contested, and the extent of his land, especially when proof of its boundaries would otherwise rest in the uncertain recollection of witnesses. It would thus be an instrument of quiet and security to him, but it could not add to the validity and completeness of the title confirmed by the act of Congress. *Langdeau* v. *Hanes*, 21 Wall. 521; *Ryan* v. *Carter*, 93 U. S. 78; *Tripp* v. *Spring*, 5 Sawyer, 209, 216.

If there were any difference in the grade of the two convey-

ances of the government—that by a direct legislative act, and that by officers acting under provisions of the statute—it would seem that there should be greater weight and dignity attached to the legislative grant as proceeding more immediately from the source of title than the patent. No impeachment can be had of the motives of the legislature; whereas the motives of officers employed to supervise the alienation of public lands may sometimes be questioned, as in proceedings to set aside their action. Still, if the law be complied with, the title passes as completely in the one case as in the other. *Montgomery* v. *Bevans*, 1 Sawyer, 653, 677.

*Judgment affirmed.*