[No. 11107.   Department Two. — June 9, 1888.]

JOHN H. McNEE, Appellant, v. P. J. DONAHUE, Respondent.

Legislative Grant — Confirmatory Act — Act of 1866 "to Quiet Land Titles in the State of California" — Surveyed Lands. — The act of Congress of 1866 "to quiet land titles in the state of California" operated as a grant *in præsenti* as to lands which had been surveyed under the authority of the United States at the passage of the act. It is not decided whether this applies to unsurveyed lands.

Id. — Time of Selection — Notice from State Authorities — Certifying over by Register — Passing of Title. — The time of selection is the time of the notice from the state authorities to the register of the United States land-office under the second section of the act. If a notice was given before the passage of the act, the title passes at the date of the passage of the act; if given afterwards, the grant, like railroad grants, attaches as soon as the notice is given, and relates back to the passage of the act. The certifying over by the register does not affect the passing of the title, but is for the purpose of furnishing record evidence of the selection and identification.

Id. — Power of the State over Lands Granted to Her by the Act of 1866 — Trust. — The title to land granted by the act of 1866, as above stated, passed to the state in trust for the beneficiaries mentioned in the act, viz., those who had purchased from the state in good faith under her laws; and the state has no power to dispose of said land to other parties.

Id. — Grant by the State in Violation of the Trust — Right of Beneficiary to Relief. — It is unnecessary to decide in this case whether a grant from the state to persons not beneficiaries under the act is absolutely void or not; if not absolutely void, the grantee takes the title in trust for those entitled under the act; if absolutely void, the patent constitutes a cloud upon the right of the beneficiary, who is entitled to relief upon that ground. Form of relief.

Appeal from a judgment of the Superior Court of Santa Clara County, and from an order refusing a new trial.

The facts are stated in the opinion.

*S. F. Leib*, for Appellant.

*Doyle, Galpin & Scripture*, for Respondent.

HAYNE, C.—The plaintiff sues in ejectment for 106.24 acres of land in Santa Clara County. The defendant denied the material allegations of the complaint, and put in a cross-complaint praying for a conveyance from the plaintiff. The court below gave judgment for the defendant as prayed for, and the plaintiff appeals.

The facts are substantially as follows:—

In September, 1853, one Stephen Franklin was the owner of two land-warrants issued under the act to provide for the disposition of five hundred thousand acres of land granted to the state by act of Congress, for which warrants full value was paid, and in said month he located the same upon the tract in controversy, which was then vacant and unappropriated public land of the United States. At the time of such location, said Franklin was in the actual possession of said tract with certain adjoining land, making 578 acres in all. The dwelling-house and barns were on the adjoining land. On the tract in controversy was an artesian well, with ditches for carrying water from the same. The whole was under one general inclosure, and was cultivated as a single farm. Franklin remained in possession until 1862, when his interest was acquired by James Donahue, the father of the defendant.

In 1862 the tract in controversy was selected by the state as lieu lands. In that year Donahue (who was then in possession) purchased from the state "in good faith" and paid the full purchase price therefor, and on January 22, 1864, the state issued and delivered to him a certificate of purchase of said lands. He continued in possession until his death, "in the year 1864 or 1865." The defendant then succeeded to the interest of his father, and ever since remained and was at the commencement of the action in the actual possession of said tract.

The land was not surveyed by the authority of the United States until May, 1866, when it was surveyed

and located in township 6 south, range 1 west, Mount Diablo meridian. It will be observed that this was before the passage of the act of July 23, 1866, "to quiet land titles in the state of California." (14 U. S. Stats. 218.) That act contained, among other things, the following provisions: —

"Sec. 1. That in all cases where the state of California has heretofore made selections of any portion of the public domain in part satisfaction of any grant made to said state by any act of Congress, and has disposed of the same to purchasers in good faith under her laws, the lands so selected *shall be and are hereby confirmed to said state.*" Then follow certain exceptions, which we do not think apply to the present case. (See *Whitney* v. *Morrow,* 112 U. S. 693.)

"Sec. 2. And be it further enacted, that where the selections named in section 1 of this act have been made on lands *which have been surveyed by authority of the United States,* it shall be the duty of the proper authorities of the state, *when the same has not already been done,* to notify the register of the United States land-office for the district in which the land is located of such selection, *which notice shall be regarded as the date of the state selection;* and the commissioner of the general land-office shall, immediately after the passage of this act, instruct the several local registers to forward to the general land-office, after investigation and decision, all such selections which, if found to be in accordance with section 1 of this act, the commissioner shall certify to the state in the usual manner."

Section 3 relates to selections upon unsurveyed lands, and gives directions concerning the making of the surveys. Section 4 relates to swamp and overflowed lands, and the remaining sections relate to matters which are not material to be considered.

The court finds that the proper authorities of the state had notified the register of the United States land-office,

etc., on May 30, 1866, which was before the passage of
the act, and therefore within the clause, "when the same
has not already been done," above quoted. Apparently,
to make matters sure, the state authorities gave another
notice after the passage of the act, "which notice was
received by the register of the said United States land-
office, and filed by him on the tenth day of April, 1867."
But it does not appear that the commissioner of the land-
office ever certified the land over to the state as directed
by section 2, above quoted.

So much for the basis of the defendant's claim. The
plaintiff claims the land under a selection by the state
in September, 1873, as part of the agricultural-college
grant. The purchase price was fully paid by plaintiff
and his assignors. On June 1, 1882, the United States
issued and delivered a patent for the land to the state;
and on the seventeenth day of June the state issued and
delivered her patent to the plaintiff.

We think the act of 1866 operated as a grant *in præ-
senti*. A confirmatory act operates as a grant. "That a
grant may be made by a law, as well as a patent pursuant
to a law, is undoubted (6 Cranch. 128); and a confirma-
tion by a law is as fully, to all intents and purposes, a
grant as if it contained in terms a grant *de novo*."
(*Strother* v. *Lucas*, 12 Pet. 454; *Chouteau* v. *Eckhart*, 2
How. 372, 373; *Grignon's Lessee* v. *Astor*, 2 How. 319;
*Langdeau* v. *Hanes*, 21 Wall. 521; *Maxwell Land Grant
Case*, 122 U. S. 365; 121 U. S. 325.)

And in construing grants the words "is hereby
granted" operate as a grant *in præsenti*. In *Leavenworth
etc. R. R.* v. *United States*, 92 U. S. 741, the court, *per*
Davis, J., said of the grant there in question: "It creates
a present interest, and does not indicate a purpose to
give in future. 'There be and is hereby granted' are
words of absolute donation, and import a grant *in præ-
senti*. This court has held that they can have no other
meaning; and the land department, on this interpreta-

tion of them, has uniformly administered every previous similar grant." (And to the same effect, *Missouri R'y Co.* v. *Kansas Pac. R'y Co.*, 97 U. S. 496; *Railroad Company* v. *Baldwin*, 103 U. S. 429; *Van Wyck* v. *Knevals*, 106 U. S. 365; *Wright* v. *Roseberry*, 121 U. S. 500.)

Now, the words "is hereby confirmed," used in the act under consideration, are words of present confirmation; and if "confirmed" means "granted," as is above shown, they must be words of present grant. And they were so construed in *Ryan* v. *Carter*, 93 U. S. 78. Such a construction goes much further toward carrying out the purpose of the act, which was to "quiet" land titles, than one which would vest no right in the state, or in the purchasers from her in good faith, but which simply offers a privilege of purchase. The latter construction, as it seems to us, would tend to open the door to those who go prowling around for flaws in their neighbors' titles.

It makes no difference that the state authorities were required to notify the register of the selections "when the same has not already been done." Such notice had already been given at the date of the passage of the act. In the language of the statute, "the same has already been done."

And the second notice, which was probably given out of abundance of caution, did not affect the validity of the first notice. The provision of the act is, that the time of said notice "shall be regarded as the date of the state selection." And in view of the fact that the notice had already been given, it follows that it must be held that there was a valid selection as of a date prior to the passage of the act. But if this were not the case,—that is to say, if the second notice (given after the passage of the act) is to be taken as the notice in the case,—it would not, in our opinion, affect the question as to the operation of the act as a grant *in præsenti*. The case, we think, would be like that of railroad grants, which, although the lands cannot be identified until the road

is located and the map filed, yet nevertheless operate as grants *in præsenti,* and upon the location of the road and filing of the map, relate back to the passage of the act. "In that sense we say that the grant is one *in præsenti.* It cuts off all claims . . . . to any portion of the lands from the date of the act, and passes the title as fully as though the sections had then been capable of identification." (*Van Wyck* v. *Knevals,* 106 U. S. 365; *Railroad Co.* v. *Baldwin,* 103 U. S. 429; *Missouri R'y Co.* v. *Kansas Pac. R'y Co.,* 97 U. S. 496, 497; *Leavenworth R. R.* v. *United States,* 92 U. S. 741; *Schulenberg* v. *Harriman,* 21 Wall. 60; see also *Wright* v. *Roseberry,* 121 U. S. 500; and *Lessieur* v. *Price,* 12 How. 76.)

Nor does it make any difference that the commissioner of the general land-office (on receiving the notices above mentioned from the various registers), "if he finds them to be in accordance with section 1 of this act, is directed to certify them over to the state in the usual manner." This merely furnishes record evidence of the selection and identification. And this purpose is not at all affected by the fact that the land-officers are to first investigate whether the selections came within the purview of the act. Even if a patent had been required to be issued, it would not have operated to transfer the title which had already passed. As was said by the court, *per* Field, J., in *Whitney* v. *Morrow,* 112 U. S. 695): "If by a legislative declaration a specific tract is confirmed to any one, his title is not strengthened by a subsequent patent from the government. That instrument may be of great service to him in proving his title if contested, and the extent of his land, especially when proof of its boundaries would otherwise rest in the uncertain recollection of witnesses. It would thus be an instrument of quiet and security to him, but it could not add to the validity and completeness of the title confirmed by the act of Congress." (See also *Langdeau* v. *Hanes,* 21 Wall. 529.)

This construction is not inconsistent with the cases of *Toland* v. *Mandell*, 38 Cal. 30, and *Collins* v. *Bartlett*, 44 Cal. 371. Those decisions related to *unsurveyed* lands, and consequently were under the third section of the act under consideration. The second section of the act relates to surveyed lands (by which we understand lands surveyed under the authority of the United States *at the date of the act*), and is somewhat different from the third section, relating to unsurveyed lands.

The correctness or incorrectness of those decisions, therefore, is not involved here. The case of *Hodapp* v. *Sharp*, 40 Cal. 69, so far as we can ascertain from the report, seems to have been under the second section; and the court reached a different conclusion from that at which we have arrived. It held that the provision that the selections " shall be and are hereby confirmed to said state," as used in the act, mean that the selection "is not confirmed, and title does not pass to the state until the land is certified over to the state" (p. 73). This seems to us to be contrary to the federal decisions above cited, which, of course, in a matter of this kind, are of paramount authority.

If our construction of the act of 1866 is the true one, the legal title passed to the state. And it seems clear that, if it did, she held it in trust for the purchasers mentioned in the act, and could not dispose of it to others. The whole purpose of the act was to quiet the titles of those who had purchased from the state in good faith. The predecessors of the defendant had done all that was required of them, and consequently had the beneficial interest. They could be in no worse position than that of settlers upon public lands who have complied with all the conditions required of them. And, as was said by Bradley, J., delivering the opinion in *Wirth* v. *Branson*, 98 U. S. 121: "The rule is well settled by a long course of decisions that when public lands have been surveyed and placed in the market, or otherwise

opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract *is to be regarded as the equitable owner thereof*, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside. This was laid down in the case of *Lytle* v. *State*, 9 How. 314, and has ever since been adhered to. (See *Stark* v. *Storrs*, 6 Wall. 402.) Subsequent cases which have seemed to be in conflict with these have been distinguished from them by the fact that something remained to be done by the claimant to entitle him to a patent; such as the payment of the price, the payment of the fees of surveying, or the like." (See also *Simmons* v. *Wagner*, 101 U. S. 261.)

If the state held the land in trust for the predecessor of the defendant, she could not dispose of it to the plaintiff. (*Van Wyck* v. *Knevals*, 106 U. S. 365.)

The cases of *Wirth* v. *Branson* and *Simmons* v. *Wagner*, above cited, seem to hold that a subsequent patent from the state in violation of the rights of "the equitable owner" is absolutely void. But for the purposes of the present case, it is immaterial whether the legal title passed to the plaintiff by the state patent, or not. If it did pass to him, he took it with a trust in favor of the defendant. If what we have endeavored to show above be correct, the defendant was the equitable owner; and it is found that the plaintiff had notice of the defendant's rights.

The plaintiff's counsel asks, "On what theory has a trust been declared and fastened on us?" The theory is plain: "When the legal title has passed from the United States to one party, where in equity and in good conscience, and by the laws of Congress, it ought to go to another, a court of equity will convert the holder into a trustee of the true owner, and compel him to convey the legal title." (*Rector* v. *Gibbon*, 111 U. S. 291.)

If, on the other hand, the legal title did not pass to the plaintiff, his patent constitutes a cloud upon the defendant's right, which he is entitled to have removed. In this regard, the case of *Van Wyck* v. *Knevals*, 106 U. S. 370, is precisely in point. And we may say of the defendant here (who is a cross-complainant), as was said in that case: "The existence of the patent embarrasses the assertion of the complainant's rights; that is, it prevents him from obtaining a strictly legal title, which would enable him to recover possession of the premises by an action at law. The existence of the patent also creates a cloud upon the title of the land. . . . . The existence of the patent, therefore, under these circumstances, furnishes ground for equitable relief. That relief, however, should properly be limited to a decree declaring the equity of the complainant, the invalidity of the title of the defendant, and enjoining him from the assertion of any claim to the property under the patent; but inasmuch as no objection is taken to the form of the decree as entered, which requires the defendant to execute a conveyance of the premises to the complainant, and as the execution of such a conveyance, amounting in fact to a release of his claim to the property, will accomplish all that could be legally effected, it is not considered necessary to order a modification of it."

It is unnecessary to give any extended notice to the argument that the patent from the United States to the state conveyed the land in trust for the purposes of an agricultural college, and could not be diverted from such purposes. In the first place, it is doubtful whether a trust is fastened upon the state by reason of the agricultural land grant. (Compare *Emigrant Co.* v. *County of Adams*, 100 U. S. 61.) In the second place, the title did not pass to the state under the patent from the United States, but under the previous act of 1866.

Several other points are made in the somewhat discursive brief of the learned counsel for the appellant. We

have examined them all, but do not think they require special notice. We therefore advise that the judgment and order denying a new trial be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.