Opinion of
Hon. P. H. McBride.
The plaintiffs in error brought their action of ejectment in the Cole circuit court against the defendant for a lot of land in the city of. Jefferson, and numbered 455 on the plat of said city, where the judgment being against them, they moved for a new trial, which having been refused, they excepted and sued out a writ of error from this court.
Upon the trial in the circuit court, the plaintiffs gave in evidence the following chain of title, to wit:
1. A confirmation made by the board of commissioners, on the 8th January, 1811, of two hundred arpens of land, in the county of New Madrid, to Baptiste Delisle, as described in a plat of survey certified 27 th February, 1806.
2. The commissioner’s, or N.Madrid certificate, issued 20th Novem *17 her, 1817, to Baptiste Delisle for two hundred arpens, in lieu of his land, injured by earthquakes, lying in the county of New Madrid.
3. A notice of location given to the surveyor general by Thomas Hempstead and A. L. Langham', as the legal representatives of Baptiste Delisle, dated 2d June, 1821, that they had located two hundred arpens Under the foregoing certificate, “so as to include fractional section number six, the north-east fractional quarter of fractional section number seven, and as much off the north part of the west fractional half of fractional section number eight, as will make the quantity of two hundred arpens, all in township number forty-four, north of the base line of range number eleven, west of the fifth principal meridian, south of the Missouri river.”
4. A'survéy made by the deputy surveyor of the above location, dated 5th August, 1821, and filed 11th February, 1822.
5. Patent certificate, dated 25th February, 1822, and delivered to Charles L. Hempstead.
6. Patent from the United States to Baptiste Delisle, dated the 13th November, 1822.
7. Deed from Delisle and wife to Robert D. Dawson and Godfrey Lcssieure, for the land patented to him, dated 13th September, 1842.
8. It was admitted that the parties suing as the heirs of R. Í). Dawson, were his heirs, and their names were correctly set out.
9. It was further admitted that the defendant was in possession of the land in controversy, at the commencement of this suit.
10. The monthly and yearly value of the premises was agreed upon between the parties.
The defendant, to show title in himself, relied upoii the following facts :
1. An act of congress, approved 6th March, 1820, the fourth paragraph of the 6th section of which provides as follows : “ Four entire sections of land be, and the same are hereby granted to said State (the State of Missouri) for the purpose of fixing their seat of government thereon, which said sections shall, under the direction of the legislature of said State, be located, as near as may be, in one body, at any time, in such townships and ranges áS the legislature aforesaid may select, on ally of the public lands of the United States, provided that such locations shall be made prior to the public sale of the lands of the United States surrounding such location.” United States at large, volume 8, page 547.
2. An ordinance, adopted by the convention of the State of Missouri, *18 on the 19th July, 1820, accepting the said grant of land. R. C. 1845, p. 22.
3. An act of the legislature of the State of Missouri, entitled, “ an act providing for the location of the permanent seat of government for the State of Missouri,” approved 16th November, 1820, 1 Terr, law's, 649. This act appoints commissioners to select a site for the permanent seat of government, and requires them to make their report to the next session of the general assembly of said State.
4. An act supplementary to the foregoing act, approved 28th June, 1821. 1 Terr, laws, 773. This act provides for filling vacancies that may happen in the board of commissioners, and extends the time of making their report until the next session of the general assembly.
5. A joint resolution of the general assembly, approved 28th June, 1821. 1 Terr, laws, 780, requiring the governor of the State to notify the surveyor general for the State of Illinois and Missouri, and also the register of the lapd office in which the lands are selected, that commissioners appointed for that purpose “have selected the fractional sections six, seven and eight, the entire sections seventeen and eighteen, and so much of the north part of sections nineteen and twenty as will make four sections, in fractional township forty-four, south of the Missouri river, in range number eleven, to fifth principal meridian ; and that he request the said surveyor and register to withhold the same from sale or location, until the general assembly determine whether said selection be accepted by the State.”
6. An act of the general assembly, entitled, “ an act fixing the permanent seat of government;” approved 31st December, 1821. 1 Terr, laws, 825. The first section of which accepts the land above described for the use and benefit of said State. The second section provides for the laying out of a town thereon; and the third section requires the governor to notify the surveyor general of the acceptance of said land by the general assembly, for the permanent seat of government, by transmitting to him an authenticated copy of said act.
7. Also, an act of the general assembly, entitled, “ an act supplementary to the act fixing the permanent seat of government;” approved 11th January, 1822. 1 Terr, laws, 859. This act further provides for the laying out of a town on the land selected, authorizes the sale of the lots in said town, and prescribes the terms of said sale, and requires the commissioners to make a report of their acts to the next general assembly. It further provides that “ any proposals made by any person or persons having claim to any part of the said lands select *19 ed for the permanent seat of government, in order that any claim or claims may be adjusted, provided nothing herein contained shall in any wise be construed to legalize or acknowledge such claim as valid in law,” shall, by said commissioners, be communicated to the general assembly.
8. A proclamation by the president of the United States, dated 13th June, 1823, bringing into market by public sale, in the ordinary way, townships No. 40, 41, 42, 43 and 44, in range 11, west, and townships No. 40, 41, 42 and 43, in ranges 12, 13 and 14, of the fifth principal meridian. Sales to take place on the first Monday of October, 1823.
9. It was admitted that the premises in dispute are a part of the lands described in the foregoing resolutions ; and the acts of the legislature given in evidence by the defendant subsequent thereto, and that the defendant holds whatever title the State had to the said claim.
To rebut the defendants title, the plaintiff gave the following evidence :
1. A copy of a letter from the governor of the State of Missouri, addressed to the surveyor general of Illinois and Missouri, dated 3d July, 1821, informing him of the selection made by the commissioners, for locating the permanent seat of government, and requesting him to withhold the lands thus designated, from sale or location, until the general assembly shall determine whether they will accept the same. This letter is endorsed as having been received 8th July, 1821.
2. A letter from same to same, dated 1st January, 1822, transmitting an authenticated copy of the act of 31st December, 1821, entitled an act fixing the permanent seat of government. This letter, by the endorsement thereon, appears to have been received on the day of its date.
3. A letter from the surveyor general to governor McNair in answer to the above letter, dated 2d January, 1822. After acknowledging the receipt of the letter of the 1st January, 1822, and the copy of the act of the general assembly of 31st December, 1821, the letter proceeds as follows : “ I conceive it proper for me to inform you, for the information of the general assembly, that a part of this land (referring to the land selected by the commissioners, and accepted by the act of 31st December, 1821,) was located in virtue of a New Madrid certificate, on the 2d June, 1821, as represented on the sketch, and described in the entry made thereof, which you will find herewith enclosed. You will also receive a copy of a paper purporting to be a copy of an entry, or location of fractional section number 7, township number 44, north of *20 the base line of range number 11, west of the fifth principle meridian ; this day filed in this office, by Major Taylor Berry. For the character of this last mentioned paper, as I view it, see my remarks on the back thereof.”
4. It was admitted that the journal of the senate of Missouri, of the 23d November, 1821, shows that a committee of the senate, to which had been referred the report of the commissioners, for the location of the seat of government of the State, reported to the senate that the propositions made by Angers L. Langham ought to be accepted; and that the seat of government should be permanently located on the eight hundred and ninety-two acres of land situated at Cote Sans Dessien. That one half of which Langham proposed to donate to the State, which was concurred in. On motion the report wag laid on the table until next day, and afterwards, on the 25th November, 1821? the same was indefinitely postponed.
5. That the journal of the house of representatives shows that on the 28th November, 1821, the house had under consideration the location of the permanent seat of government.
On the 15th December next, following the committee of the judiciary of the house reported to the house the state of the title at Cotes Sans Dessien. On the 28th of same month, the house had the same subject under consideration.
6. It was further admitted that the journal of the house of representatives shows that on the 3d January, 1822, governor McNair laid before the general assembly the communication received by him from the surveyor general, of date 2d January, 1822.
1. A joint resolution of the two houses of the general assembly, requesting the governor to notify the president of the United States of the selection made for the seat of government, approved 14th December, 1822. 1 Terr, laws, 984.
8. An act of the general assembly of the State of Missouri, approved 19th December, 1822. 1 Terr, laws, 1018, authorizing the trustees appointed by the act to contract with the claimant for the removal of the New Madrid location from the lands selected for the seat of government; on certain conditions; if an adjustment be not obtained, then the trustees are required to select eight squares for public purposes, and the land so selected, together with the streets and alleys laid out, are condemned for public use, &c.
9. The survey of the lands selected by the State of Missouri, mad© *21 in August, 1821, and approved by the surveyor general, on the 25th September, 1847.
Thereupon the defendant offered the following additional evidence, to wit:
1. A copy from the books of the recorder of land titles of the relinquishment of lands in New Madrid, by which it appears that the land in lieu of which the certificate in favor of Baptiste Delisle was issued, and which ¡the plaintiff had given in evidence, was made by Carter Beamon.
2. A copy of a deed from Delisle, for the land in New Madrid to Carter Beamon, dated 4th August, 1817, acknowledged on same day, and recorded on the 17th September, 1^17. It was certified by the recorder of land titles as being a true copy of the original on file in his office, and was also a sworn copy. Having first proved by a witness that he had applied to said recorder for the original which he had seen in his office and had compared with the copy, stating to him that he wished to use it on the trial of this case. But the recorder refused to let it go out of his office, saying that it was one of the files of his office, and that he was not authorized to let it go out of his office.
3. A certified copy of a deed: from Delisl.e to Alexander Conia, dated 17th October, 1810, proved on the 20th January, 1823, before the judge of the county court of St. Louis county, and recorded on 6th May, 1523, in Cole county. This deed conveys the same land in New Madrid county.
The plaintiffs objected to the introduction of both deeds as evidence in the cause, and their objections were sustained, and said deeds rejected.
4. The defendant then read in evidence the deposition of John Baptiste Delisle, which shows that until the year 1842, he never knew that the certificate issued in his favor, by virtue of which the location on the land in question was made, had been issued, nor of the location, nor survey thereof, nor of the issuing or existence of a patent to him of said land, por even that congress had passed a law for the relief of the sufferers by earthquakes in New Madrid county. And that consequently, until said last mentioned date, he never had given any assent to any of the proceedings touching the New Madrid location in his name.
On the close of the evidence, the counsel for the plaintiffs prayed the court to declare the following, in the nature of instructions, to be the law of this case.
1. The patent from the United States to J. B. Delisle, if the same be *22 true and genuine, is sufficient in law to vest the legal title to the land therein mentioned in the said Delisle, if he were living at its date.
2. The deed from Delisle and wife to Robert D. Dawson and Godfrey Lessieure, if true and genuine, is sufficient in law to vest said title in said Dawson and Lessieure.
4. That if the New Madrid certificate granted to said Delisle, was, on the 2d June, 1821, located on the land in controversy, and was after-wards surveyed by a United States surveyor according to law—was approved by the surveyor general, and said land was finally patented to Delisle, according to said location and survey, then the pffect of said patent is to vest said legal title in said Delisle, (as against any other title derived from the United States) from said 2d June, 1821, the date of said location.
5. That to vest the legal title to the four entire sections granted to the State for a seat of government, by the act of 6th March, 1820, it was necessary that said location should have been made of four whole and entire sections; and that a location thereof on two whole sections and five parts of sections, was notin conformity with said act, and therefore void, unless subsequently ratified by the government, or some department or officer thereof authorized so to do .
6. That a location of said land by the State, should have been made in the office of some officer of the land department of the United States, and that a record of said location should have been made in such office.
7. To give validity to such location, it should have been sanctioned 1 y some officer of the United States having authority in disposing of the public lands.
8. That such location could not lawfully be made in the office of the surveyor of pulic lands in Missouri and Illinois.
9. There is no evidence before the court sitting as a jury that any location of said four entire sections ever was made in fact.
10. That if the New Madrid certificate granted to John B. Delisle was, on the 2d June, 1821, located on the land in controversy, and that said location was, on the 5th August, 1821, surveyed by. the proper officer of the United States, and afterwards patented to said Delisle, in conformity to said survey, the effect of said patent is to vest the said title in said Delisle or his legal representatives, from said 5th August, 1821, as against any person deriving title from the United States after said location and before said patent.
11. That the notice of location, survey, patent and other documents and acts shown in evidence by the plaintiffs touching the location of the *23 New Madrid certificate, No. 347, issued to John B. Delisle, &c., if true and genuine documents, show a better title than any which has been shown by the defendant.
12. That the neglect of the surveyor general or the recorder of land titles to perform any act of mere duty on their part towards the consummation of a title on said location, could not affect the rights of the party interested.
The court gave the instructions numbered 1, 2 and 3, but refused to give those numbered 4, 5, 6, 7, 8, 9, 10, 11, and 12.
The counsel of the defendant then prayed the court to declare the law as applicable to this case, to be as follows :
1. -The title of the United States to the land described in the copy of the patent given in evidence by the plaintiff, was not divested out of the United States until the plat of survey made in pursuance of the notice given in evidence by the plaintiffs, was returned to the office of the recorder of land titles, and the title of the United States to the land located under the direction of the legislature of the State of Missouri, in pursuance of the fourth proposition of the sixth section of the act of congress of the 6th March, 1820, was vested in the State as early as the acceptance by said State, of the selection of land made by her commissioners. If, therefore, said acceptance was made prior in point of time to the returning of said survey to the office of the recorder of land titles, and if the land so selected and located is the same land mentioned in said copy of the patent given in evidence by the plaintiff, then said plaintiffs are not entitled to recover in this action.
2. If the John B. Delisle, who was the owner of the land in the county of New Madrid, in lieu of which the certificate No. 347 was issued, until the year 1842 knew nothing of the issuing or existence of said certificate, nor of the notice, survey or patent given in evidence by the plaintiffs, and never assented to the same prior to that date, and if prior to that date, the four sections of land mentioned in the fourth proposition of the sixth section of the act of congress, approved March 6th, 1820, had been located under the direction of the legislature of this State upon the premises in question, then no title passed to said Delisle in or to said premises as against the State of Missouri.
3. If Langham and Hempstead obtained the certificate of location, No. 347, claiming to be the legal representatives of J. B. Delisle and in that character made the location, when in fact they were not the legal representatives nor in any manner entitled to said certificate, or to the *24 land located iii virtue thereof, said íófeation is void as against this defendant;
The court gávfe the second instruction asked, and refused' the first and third.
Thereupon the court rendered a verdict for the defendant, which the counsel for plaintiffs moved to sot aside, assigning the ordinary reasons therefor ; but the court refused to set aside said verdict and to grant to plaintiffs á hew trial, to which opinion the plaintiffs excepted, aiid now bring the case to this court by writ of error.
When this case whs reached on the calendar, and prior to its argument, the several members of the court informed the counsel in the cause, of the relation which they sustained to the question involved, and to the parties thereto. Two of the members of the court own lots within the' selection made by the commissioners for fixing the permanent seat of govérnment, and one of them a lot within the claim óf Delisle; whilst the other member of the court is related by marriage to one of the parties in the action. To this it was replied, that we, owning lots are not interested in this suit, so as to disqualify us from “ sitting on the determination thereof,” within the nieaning of the 39 S. óf the judiciary act, R. C. 1845, page 335. It is true, that the judgment in this case will not preclude our rights, but if the claim set up by the plaintiffs shall be adjudged superior to the claim of the State, under whom we derive titles, it would be idle for us to resist that claim ; arid hence, if we are not interested and disqualified, according to the letter, we are within the spirit of the act referred to. Notwithstanding, the counsel of the plaintiffs insisted on our hearing the cause, arid the dcféndant’s counsel not objecting, it was submitted on arguihent, arid written brief to two members of the court.
In arriving at the conclusion which I have in this case, I am not aware of any considerations of interest having influenced my mind. I have endeavored to divest myself of all such feeling, and to decide the case according to law and the principles of adjudged cases.
I shall notice only two questions presented by the record, as the decision of these will be decisive of the plaintiffs right to recover. The first, is that presented by the first instruction asked by the defendant’s counsel, and refused by the circuit court.
It was virtually conceded by the plaintiffs counsel in the argument, that the principle set out in the first instruction asked by the defendant, had been decided by the supreme court of the United States, in the case of Bagnell et al vs. Broderick 13 Peters, R. 436, and in the case of *25 Barry vs. Gamble 3 Howards, R. 51. But they insisted that the point was not directly before that court, or was not important to the decision of the case ; and that therefore the remarks of that court on the point, should not be regarded as binding authority. By an examination, however, of these cases, it will be seen that the point was distinctly decided by that court, also that that court considered it important in the decision of the cases.
In the case first above cited, the court declare that the United States never deemed the land appropriated, until the survey was returned , ” and again, ee the only evidence of the location recognized by the government as an appropriation (of the land) was the plat and certificate of the surveyor 3” and again, the court say, our opinion is, first, that the location referred to in the act, is the plat and certificate of the survey returned to the recorder of land titles, because by the laws of the United States, this is deemed the first appropriation of the land, and the legislature of Missouri had no power, had it made the attempt, to declare the notice of location filed with the surveyor general an appropriation contrary to the laws of the United States.
In the case of Barry vs. Gamble, 3 Howard, 51, the court use the following language : “ By the certificate of the recorder of land titles at St. Louis, Lafleur was entitled to 64-0 acres of land, in compensation for lands of his injured by the earthquake in New Madrid county. On this, the survey of 1818 is founded. Its return by the surveyor to the office of the recorder, was the first appropriation of the land, and not the notice to the surveyor general’s office, requesting the survey to be. made as this court held in Bagnell et al vs. Broderick.”
In each of the foregoing cases, there is a dissenting opinion; but in neither, is the correctness of the opinion delivered by the court, questioned, upon the point under consideration.
Although the supreme court of the United States labor under an error, as I apprehend, as to the power of the legislature of Missouri,in declaring what evidence shall be sufficient to support an action of ejectment, yet the remarks made by that court show most incontestibly that the question of when the United States deem the public lands appropriated, under the New Madrid act, was before that court, and was considered and decided by the court.
The construction given to the act of our general assembly, may be the correct one, as it was doubtless the intention of the legislature, to give the action of ejectment, where the title had been so far matured as to need nothing but the patent to consummate it. The point of time, *26 then, at which the land was appropriated, under the New Madrid act, so as to sever it from the public domain and exempt it from sale, or other disposition by the general government, may be regarded as res judicatae.
By a recurrence to the evidence offered by the plaintiffs, it will be seen that the re-survey made by the deputy surveyor, of the location of certificate No. 347, in favor of Baptiste Delisle, was made on the 5th of August, 1821, and the same was returned to the recorder’s office, on the 11th February, 1822, and upon which the patent certificate was issued 25th February, 1822, and delivered to Charles L. Hempstead. Then, up to the 11th February, 1822, no effective act had been done, either by the locator, or the officers of the government charged with the subject, divesting the government of title to the land in controversy, or giving title to the plaintiff.
On the 11th February, 1822, the certificate of re-survey was returned to the recorder’s office, when, if the title had been in the United States, it might have passed to Delisle or those claiming under him.
But by reference to the evidence of the defendant, it appears that on the 31st December, 1821, whilst the title was on the United States, the general assembly of the State of Missouri, by an act of that date, accepted for the use and benefit of the State, the four sections of land selected by the commissioners, on behalf of the State, and in pursuance to an act of congress, approved 6th March, 1820. This was a public act of the general assembly, and constituted all that was then necessary to be done on the part of the State, to vest in her all the title which the government of the United States had in and to the land selected. It was a full and complete consummation of the grant, made to the State of Missouri by the general government, for the location of her seat of government, and she needed no parchment evidence in the form of a patent from the president of the United States, to give her title, because her title was evidenced by an act of congress making the grant, and by an act of her own general assembly, accepting the same, and designating the land upon which it was to attach.
Having fully complied with the terms of the grant made by congress, the State had acquired title to the land in controversy, before the return of the certificate of re-survey to the recorder’s office, and hence, at the date of the filing of the certificate of re-survey, the government of the United States had no title to the land attempted to be located, and consequently no title passed to Delisle.
I have assumed what I apprehend is incontrovertible, and needs no *27 authority to sustain that a grant of land made by an act of congress, vests in the grantee, the title of the government as fully and effectually as a patent could do.
To impeach the act of the general assembly of 31st December, 1821, accepting the land selected by the commissioners appointed for that purpose, for the location of the permanent seat of government, extracts from the journals of the senate and house of representatives of the Missouri general assembly, were given in evidence, showing that subsequent thereto, the question of location was before these bodies, and was, on motion, indefinitely postponed ; hence, if the action then had, is entitled to any consideration, it may be regarded rather as a ratification or approval of the location made by the act of 31st December, 1821. But I apprehend they are entitled to no weight.
My opinion, then, is, that the circuit court ought to have decided the law to be, as asked by the defendant in his first proposition, and so deciding that court should have found a verdict for the defendant.
2. Did the court decide correctly in declaring the law to be as set out in the defendant’s second proposition.
The evidence shows that all the steps taken for the purpose of obtaining a grant of land from the United States, in lieu of land owned by John B. Delisle, lying in New Madrid county, and which had been injured by earthquakes, were taken by Langham and Hempstead, or at their instance, they representing themselves to be the legal representatives of Delisle, and without the consent, knowledge, or authority of Delisle, and that what was done by them in his name, did not receive his sanction or assent until the year 1842. But it is insisted that the law will imply his assent, as the grant was beneficial to him. This might be a safe implication, if the grant had been a pure donation, unaccompanied with any condition, but such is not the fact. The act of congress for the relief of the inhabitants of New Madrid county, whose lands had been materially injured by earthquakes, provides that where locations are made under the act, the title of the individual to the land injured, shall revert to and become absolutely vested in the United States. Instead, therefore, of its being a pure donation on the part of the government, it was a proffered barter or exchange of lands by legislative enactment, where the value of the land in New Madrid had been entirely destroyed, it might be regarded as a donation of other land to the individual owner; but where that was not the case, it could not be so considered. Now it is a well known fact that much of the land exchanged with the government under this law, is, this day, of more in *28 trinsic value than the land .located in lieu thereof. Where this is the case, the government, instead of making a donation, has driven a profitable bargain. But the government is not chargable with any wrong in this transaction, because the owners of land in New Madrid were not compelled to accept the provisions of the act. If they did so, it was a voluntary act on their part, and their assent should be evidenced by some affirmative act done by them.
There is, however, in this case,no ground forimplication; all presumption of assent, is utterly excluded by the evidence of Delisle himself, who states that he was wholly ignorant of the existence of the act of congress on that subject, until the year 1842. He could not be divested of his land in New Madrid, until he assented to the exchange, and he could give no assent until he was informed of the act of congress making provision for those whose land had been injured. The title, then, to the land in New Madrid, remained in Delisle up to the tyear 1842, when he assented to what had been done by Langham and Hempstead in his name; and, as congress only intended to grant other land, on condition that the title to the land injured should revert to and vest in the government, no title could pass to Delisle until 1842 ; prior to which time, the State of Missouri had acquired title to the land in controversy.
But the act of congress cannot be regarded as a direct grant of land. It was a grant on condition that the party applying for the benefit of the act, should be the owner of land within the boundary that the county of New Madrid had on the 10th November, 1812, and whose land had been materially injured by earthquakes; and who would make the necessary proof before the recorder of land titles, for the then territory of Missouri.
These steps entitled the claimant to a certificate from the recorder, which he was to procure to be located by the principal deputy survey- or, who was to cause a survey thereof to be made, and return a plat of the location to the recorder, together with a notice in writing, designating the tiact located and the name of the claimant on whose behalf the same shall be ■ made, which notice and plat the recorder was required to record in his office, and was entitled to receive from the claimant for his services, the sum of two dollars for each claim. The surveyor was also allowed to chargs the claimant lees for his services. It was therefore an offer to grant land, and the act throughout contemplates the consent of the claimant, by the doing of certain acts on his part, before he is to receive the benefit of the provisions contained in the law. Con *29 gress, in the enactment of this law, cannot be charged with the intention of forcing her bounty upon these people, much less is she chargable with the iniquity of endeavoring to divest them, without their consent, of their title to land in New Madrid county. And I know of no principle of law which would authorize Langham and Hempstead, strangers as they appear to be to the New Madrid claimant, to institute and carry on proceedings by which he is divested of his title to the land owned by him in New Madrid county. They had no authority from Delisle to act in the matter, and their acts should be esteemed and held void and inoperative until sanctioned by him in 1842.
The assent of Delisle, in 1842, to the acts of Langham and Hemp-stead, in endeavoring to obtain for him other land in lieu of his land in New Madrid, cannot be made to relate back so as to cut out the title of the State. The doctrine of relation should never be indulged to the prejudice of rights equally meritorious.
It becomes necessary sometimes to effectuate justice, but should never be permitted where it works a manifest wrong to a party who had bona fide become interested in the subject matter.
When the title was acquired by the State of Missouri to the land in controversy, there was no legal obstacle in the way of the acquisition. The general government had the title to this land, as fully and completely as she had to any of the public lands; and, although she had proffered to give this land, as well as any other of the public lands subject to sale, to those who would accept the same, upon the conditions contained in the act of 17th February, 1815, yet Delisle had not, on the 31st December, 1821, taken the requisite steps to entitle him to its location.
Neither was there on the 31st December, 1821, any law of congress, or any order or direction of any department or officer of the government of the United States, excluding this land from the selection to be made by the State. The land being then subject to the selection, and having been selected by the State, no subsequent act of Delisle could affect the title of the State.
I conclude, therefore, that the circuit court decided the law correctly, in the second instruction asked by the defendant’s counsel.
I do not deem it necessary to notice the minor points raised in the case, for however they might be decided, their decision ought not to control the final determination of the cause ; and besides, judge Napton and myself do not concur fully upon the points above discussed.
*30 Judge Scott being disqualified by law, did not sit in the case, and judge Napton and myself differing in opinion, the judgment of the circuit court is affirmed.