WRIGHT, *Appellant,* v. GISH *et al.*

1. **Land and Land Titles:** PUBLIC LANDS : GRANTS TO STATE TO
AID IN CONSTRUCTION OF RAILROADS: ACT OF CONGRESS OF JUNE 10,
1852.    The act of congress of June 10, 1852, granting to the state of
Missouri certain public lands therein, to aid in the construction of
the Hannibal & St. Joseph Railroad, was a grant *in praesenti,* and
passed the title to the state immediately upon the definite location
of the road.

2. ——— : ——— : ——— : ——— : SUBSEQUENT ENTRY.    The entry
of a portion of such lands in the public land-office, after the title
passed from the government, under the act of congress of June 10,
1852, was invalid, and a patent granted thereto void.

3. ——— : ——— : ——— : ——— : EXCEPTIONS TO GRANT.    Where it
appeared from the tract-book at the local land-office that certain
lands comprised within such grant were posted as having been
entered in 1839, but the records in the general land-office showed
that such posting was a mistake, and that the lands so posted as
entered had, in fact, never been entered, but that the title to
them was in the United States at the time of the passage of the
act of June 10, 1852, they were not excepted from the operation of
the grant of said act.

4. ——— : MUNIMENT OF TITLE : LEGISLATIVE GRANT.    A legislative
grant is the highest muniment of title, and is not strengthened by
a subsequent patent to the same land.

*Appeal from Livingston Circuit Court.*—L. H.
WATERS, ESQ., Special Judge.

AFFIRMED.

*L. A. Chapman* for appellant.

(1) Instruction numbered one, asked by the plain-
tiff and refused by the court, should have been given.
*Railroad v. Lindell's Heirs,* 39 Mo. 344; 1 Greenl.
Evid., secs. 207, 208 ; *Railroad v. Whitney,* 27 N. W.
Rep. 69, and cases cited.    (2) Defendants had no title.
The railroad company has shown clearly that it never

had any title to the lands in suit, because no title could pass under the act of congress of June 10, 1852, and the act of the legislature of September 20, 1852, until plats or descriptive lists of the lands selected shall be filed with the secretary of state, and no map of the lands including these lands was filed in the office of the recorder of deeds therein. *Railroad v. Lindell's Heirs*, 39 Mo. 329 ; *Baker v. Gee*, 1 Wall. (U. S.) 333 ; *Funkhouser v. Peck*, 67 Mo. 33 ; *Railroad v. Smith*, 41 Mo. 310. (3) There is no evidence of title in the state of Missouri to the land in controversy. *Railroad v. Smith*, 41 Mo. 310 ; *Funkhouser v. Peck*, 67 Mo. 19 ; *Railroad v. Lindell's Heirs*, 39 Mo. 329. (4) The court erred in refusing to give for plaintiff instructions one and five. *Thomas v. Railroad*, 2 Copp Pub. Land Laws, 860 ; *White v. Railroad, Ib.*, 876 ; *Dalton v. Railroad, Ib.*, 861 ; *Barbean v. Railroad*, 9 Copp Land Owner, 81 ; *Graham v. Railroad, Ib.*, 236.

*Thos. E. Turney, Strong & Mosman* and *C. H. Mansur* for respondents.

(1) The act of congress of June 10, 1852, was a grant, *in praesenti*, to the state of Missouri of every alternate section of land designated by even numbers, within six miles of the railroad on each side, in so far as complete title of such lands remained in the United States at the date of the act. *Railroad v. Railroad*, 97 U. S. 497 ; *Railroad v. United States*, 92 U. S. 733 ; *Railroad v. Baldwin*, 5 Am. & Eng. Ry. Cases, 408 ; *Schulenberg v. Harriman*, 21 Wall. 44 ; *Railroad v. Smith*, 9 Wall. 95 ; *Whiting v. Morrison*, 112 U. S. 693. (2) The act granted lands to be located, and the location in this case became fixed, when the route of the railroad was fixed, viz., June 10, 1853. *Schulenberg case, supra*, 60 ; *Railroad v. United States*, 92 U. S.

741 ; see also note to *Grinnell v. Railroad*, reported in 5 Am. & Eng. R. R. Cases, 451-2-3 ; *Whiting v. Morrison*, 112 U. S. 693 ; *Lessieur v. Price*, 12 Mo. 14 ; s. c., 12 How. (U. S.) 59. (3) It was not necessary, in order to vest the title in the state, that a list of the lands should be certified by the commissioner of the general land-office, under the act of congress, August 3, 1854. "A direct legislative grant of public lands is the highest muniment of title, and is not strengthened by a subsequent patent of the same land." *Whiting v. Morrison*, 112 U. S. 693 ; *Lessieur v. Price*, 12 How. (U. S.) 59 ; s. c., 12 Mo. 14. (4) The filing of plats or descriptive lists in the office of the secretary of state, or in the office of the recorder of deeds in Livingston county, was not necessary, in order that the title should vest in the railroad company under the act of congress of June 10, 1852, and the act of the Missouri legislature of September 28, 1852. *Funkhouser v. Peck*, 67 Mo. 35. (5) This land was not within any of the exceptions provided in the act of congress of June 10, 1852. (6) There is no estoppel in this case. The railroad company, in 1865, openly claimed the land, sold it, put its grantees in possession, and they have remained in the open possession of the land at the time of plaintiff's purchase in 1882, claiming to be owners under a title from the railroad company. *Funkhouser v. Peck*, 67 Mo. 33 ; *Bates v. Perry*, 51 Mo. 449 ; *Austin v. Loring*, 63 Mo. 19 ; *Pilkington v. Ins. Co.*, 55 Mo. 172. (7) The patent offered by plaintiff cannot prevail against the prior legislative grant. *Lessieur v. Price, supra ;* s. c., 12 How. (U. S.) 59.

NORTON, C. J.—This suit is by ejectment to recover the possession of the following land situated in Livingston county, viz: The northeast quarter of the northeast quarter of section 28, township 58, range 22. Judgment was rendered for defendants, from which plaintiff has

appealed, and assigns as the chief ground of error the action of the court in giving and refusing instructions.

Plaintiff, in support of his title, put in evidence a patent issued to him by the United States for the land in dispute, dated May 10, 1882. To overcome the right of plaintiff to recover on this patent, defendants rely upon two grounds: (1) that, by virtue of an act of congress of June 10, 1852, granting certain lands to the state to aid in the construction of certain railroads, the title to the land in question was vested in the state; (2) that, by virtue of an act of the legislature, approved September 20, 1852, the title of the state was vested in the defendant, Hannibal & St. Joseph Railroad Company. In support of this claim said acts were put in evidence, and it was further shown that one Elijah Harvey had, on the seventh of November, 1839, entered at the local land-office, at Milan, the east half of the northeast quarter of section 22, township 58, range 22; that the local land-officers, in posting said entry on the tract-book, by mistake marked the entry as having been made of the east half of the northeast quarter of section 28, township 58, range 22; that the mistake thus made being discovered at the general land-office, the commissioner thereof, on the tenth day of April, 1869, directed the local officers to correct the mistake on their books, and, on the eleventh day of April, 1877, the local officers were directed by the commissioner to restore the land to market, and add the land in suit to their list of lands for sale, and on the twenty-second of January, 1881, the land in suit was purchased by plaintiff, and the patent read in evidence was issued to him.

The evidence further showed that the route of the Hannibal & St. Joseph Railroad was located and fixed on the tenth of June, 1853, and the road was completed

in 1859, and a map showing such location was filed in the general land-office in Washington, the distance from Hannibal to St. Joseph being two hundred and six miles. The state, under the grant to aid in its construction, was entitled to receive seven hundred and nine thousand acres, but only received, in consequence of prior grants and sales, six hundred and one thousand acres. While the evidence shows that other lands were selected in the place of lands lost within the six-mile limit, so far as it could be done under the terms of the grant, it does not show that any specified tract was selected in lieu of any particular tract of land so lost. It is also shown that the land in controversy was within two miles of the road as located. The evidence showed that the land in question was not included in the list of land approved by the secretary of the interior, or in the lists forwarded by the commissioner of the general land-office to the local land-officers, and from them certified to the railroad company, but that it was upon the list furnished to the land-officers of the company from which they made sales.

It further appears that the land-officers of the railroad company, in 1869, sold the land in dispute to one Findley, who went into possession, and that, upon the cancellation of his purchase, in February, 1880, the land was sold by the company to defendant, Gish, who received a warranty deed therefor, in April, 1880, at which time the whole of said land was under fence and in cultivation. The circuit judge, on this state of facts, tried the case, as shown by the instructions, on the theory that the title to said land, when the Hannibal & St. Joseph Railroad was definitely located, passed to the state by virtue of the grant contained in the act of congress of 1852, and that, therefore, the plaintiff, though holding a patent issued in 1882, could not recover.

The instructions are as follows:

"1. The title of the land, in controversy, passed to the state of Missouri under the act of congress of June

10, 1852, upon the definite location of the line of the road on the tenth day of June, 1853.''

"2. The title having passed from the government under the act of congress of June 10, 1852, and before the entry of the same by plaintiff's ancestor, the patent to James Wright is a nullity, and plaintiff cannot recover."

So much of section two of the act of congress, which it is claimed vested the title to the land in controversy in the state, is as follows: "And be it further enacted, that there be and is hereby granted to the state of Missouri, for the purpose of aiding in making the railroads aforesaid, every alternate section of land, designated by even numbers, for six sections in width on each side of said road; but in case it shall appear that the United States have, when the line or route of said roads or either of them shall be definitely fixed by the authority aforesaid, sold any section or any part thereof granted as aforesaid * * * then it shall be lawful for any agent or agents to be appointed by the governor of the state to select, subject to the approval of the secretary of the interior, from the lands of the United States most contiguous to the tier of sections above specified, so much land in alternate sections or parts of sections as shall be equal to such lands as the United States have sold." The fourth section provides, "that the said lands hereby *granted* to the said state shall be subject to the *disposal* of the legislature thereof;" and the fifth section, after providing in what manner sales of said lands shall be made, enacts that the road if not completed in ten years, no further sales shall be made and the lands unsold shall *revert* to the United States.

In the case of *Schulenberg v. Harriman*, 21 Wall. 44, the Supreme Court of the United States was called upon to decide whether, under a similar act of congress, granting lands to the state of Wisconsin to aid in the construction of certain railroads, the title passed in vir-

tue thereof to the state. The act of congress before the court in that case for construction is identical with the act of June 10, 1852, under consideration, except that it granted every alternate section of land designated by *odd* numbers, instead of every alternate section designated by *even* numbers for six sections in width on each side of the road; and it is there held that the act was a grant *in praesenti*, and passed the title to the state to the odd numbered sections to be afterwards located; when the route of the road was fixed, their location became certain, and the title, which was previously imperfect, acquired precision and became attached to the land. It was further held that unless there are other clauses in a statute restraining the operation of words of present grant, they must be taken in their natural sense, to import an immediate transfer of title, although subsequent proceedings may be required to give precision to that title and attach it to specific tracts.

So in case of *Railroad v. United States*, 92 U. S. 733, it is held that when congress enacts " that there be and is hereby granted," to a state to aid in the construction of a specified railroad, "every alternate section of land designated by odd numbers," within certain limits of each side of the road, the state takes an immediate interest in land so situate, whereto the complete title is in the United States at the date of the act, although a survey of the land, and a location of the road, are necessary to give precision to the title and attach it to any particular tract. A direct legislative grant is the highest muniment of title, and is not strengthened by a subsequent patent to the same land. *Whitney v. Morrow*, 112 U. S. 693; see also *Lessieur v. Price*, 12 How. 59; s. c., 12 Mo. 14.

The construction thus put on such acts of congress by the Supreme Court of the United States is binding upon us, and fully justified the circuit court in trying the case on the theory it did. Notwithstanding it ap-

peared from the tract-book in the local land-office that the land in dispute was posted as having been entered by Findley, in 1839, it did not so appear at the general land-office, but, on the contrary, it did appear from the records in the latter office that such posting was a mistake made by the local land-officers, and that, in fact, the land had never been entered by him, but that the title thereto was in the United States at the time the act of June 10, 1852, was passed; and for these reasons, we do not think that the land in question was excepted from the operation of the grant. If Findley were claiming this land, or if the plaintiffs were claiming through him, the authorities cited by appellant's counsel might have some bearing.

We are of the opinion that the judgment is for the right party and discovering no reversible error in the record the judgment is affirmed. All concur, except Judge Sherwood absent.