WUNDERLICH, *Appellant*, v. SPRADLING.

Division Two, March 24, 1894.

1. **Ejectment:** PRIMA FACIE TITLE. *Where a plaintiff in ejectment has shown title in a railroad company under which he claims title, a prima facie case is made and the burden is on the defendant to show that the railroad had lost its title before plaintiff acquired the same from it.*

2. ———: RAILROAD GRANT: CONDITION PRECEDENT. *The filing, by a railroad, of maps as required by section 6, of act of the legislature of 1852 (Laws, 1852-3, p. 10) designating the lands it had located for its main and branch lines respectively was not a condition precedent for vesting title in the road.*

*Appeal from Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*John W. Booth* for appellant.

(1) A legislative act which concerns the public generally is a public act of which the courts take judicial notice. Potters Dwarris on Statutes, p. 53. (2) Courts take judicial notice of such events as form a part of the history of the state, of geographical facts, and of the state's disposition of public lands. *Swinnerton v. Ins Co.*, 37 N. Y. 174; *People v. Snyder*, 41 N. Y. 397; *Mathis v. Railroad*, 83 Ala. 411; *Smith v. Stephens*, 82 Ill. 554; *United States v. Teschmaker*, 22 Howard, 392; *Keene v. McDonough*, 8 Peters, 308; *Hoyt v. Russell*, 117 U. S. 401; *Pearce v. Langfit*, 101 Pa. St. 507; *McConnell v. Bowdry*, 4 T. B. Monroe, 392; *Railroad v. Pierce*, 95 Ind. 496; *Martin v. Martin*, 51 Me. 366; *Prince v. Skillin*, 71 Me. 361; *Holmes v. Kring*, 93 Mo. 452. (3) The effect of the act of congress of June 10, 1852, granting land to the state of Missouri to aid in the construction of a railroad from St. Louis to the western boundary of the state, and of the act of the legislature of Missouri of December 25, 1852, was to vest in the Pacific railroad corporation, for the uses and upon the terms and conditions in said acts provided, the fee-simple title to the even-numbered sections of land lying within six miles of the line of railroad composed of the main line of the Pacific railroad from St. Louis to Franklin (now Pacific), and of the southwest branch from Franklin to the western boundary of the state, owned by the United States, at the time when said line was definitely fixed by authority of the state. 10 U. S. Stat. at Large, pp. 8, 9, 10; Session Acts, 1852–3, pp. 10–15. (4) The grant to the Pacific railroad was of part of said lands for the use of its main line, and of another part for the use of its southwest branch. Session Acts, 1852–3, p. 10, secs. 4, 10, 11. (5) The railroad from St. Louis to

the western boundary of the state having been completed within the time prescribed by the act of congress of June 10, 1852 (10 U. S. Stats. at Large, p. 8), as extended by the act of congress of June 5, 1862 (12 U. S. Stats. at Large, p. 422), the disposition made of the land grant by the state, by way of securing the building of the road can not be questioned. *Railroad v. McGee*, 115 U. S. 469. (6) The act of December 25, 1852, granting the land to the Pacific railroad, was as to. the state of Missouri an absolute grant, without any provision for a forfeiture to the state. Laws of Mo., 1852–3, p. 10. (7) The provisions in the act of congress of June 10, 1852, that the land granted and selected should be disposed of only as the work progressed, were simply limitations of the power to sell and convey, of which only the United States or its assigns could take advantage. *Railroad v. Att'y Gen'l*, 118 U. S. 682. (8) The charter of the Pacific road authorized it to take, hold and convey any real estate (Acts of 1849, p. 219, sec. 1), and to mortgage its corporate property and franchise to raise funds for completion of the road. Acts of 1851, p. 271, sec. 7.

*J. C. Kiskaddon* for respondent.

(1) The lands selected along the main line within the six-mile limit, from St. Louis to the divergence of the southwest branch, and lands outside of the six-mile limit selected to make up deficiencies within the limit, belonged to the main line of the Pacific railroad. Lands within the six-mile limit selected along the southwest branch, from the point of divergence westward, and lands outside of the six-mile limit selected to make up deficiencies within that limit, belonged to the southwest branch. Session Acts, 1853, p. 10, secs.

3, 4, 10, 11.    (2) The act of congress of June 10, 1852, granted to the state "every alternate section of land designated by even numbers for six sections on each side of said road," to be "exclusively applied in the construction of that road for which it was granted and selected." 10 U. S. Stats. at Large, p. 8, sec. 12. (3) It is in evidence that no map, plat or other designation of the lands selected by the Pacific railroad, showing what lands had been selected for the main line and what for the southwest branch, had ever been filed in the office of the secretary of state. Plaintiff claims directly under the Pacific railroad, and defendant is in possession. Plaintiff can not recover until he shows by a plat recorded in the recorder's office, and also by another plat filed in the office of the secretary of state, what lands were selected for the main line. There is a plat in evidence purporting to have been filed and recorded in the recorder's office of Franklin county, but that does not show what land, if any, was selected for the main line. This is necessary to designate what land the Pacific railroad acquired title to for its main line. Session Acts, 1852, p. 10, sec. 6; *Railroad v. Lindell*, 39 Mo. 329, 342; *Baker v. Gee*, 1 Wall. 333, 336; *Railroad v. Smith*, 31 Mo. 310; *Railroad v. Moore*, 37 Mo. 338; *Funkhauser v. Peck*, 67 Mo. 19; *Wright v. Gish*, 94 Mo. 110.

GANTT, P. J.—This is an action in ejectment in statutory form for possession of the northeast quarter of the northeast quarter of section number 20, township 42, range 1 west, in Franklin county. The answer admits possession and denies all other allegations. Defendant recovered judgment in the circuit court and plaintiff appeals.

The plaintiff asserts title by virtue of a sale of the land as the property of the "Pacific Railroad" a corpo-

ration chartered March 12, 1849, under a judgment and execution against said company and a sheriff's deed. The defendant claims under quitclaim deed from the St. Louis and San Francisco Railroad Company with special warranty against any one claiming under that road.

The plaintiff on the trial, deraigned his title from the government of the United States, under an act of congress approved June 10, 1852 (Stats. at Large, vol. 10, p. 8), and an act of congress supplemental to said act, approved June 5, 1862 (Stats. at Large, vol. 12, p. 422). By sections 1 and 2 of the act of 1852, the right of way through the public lands was granted to the state of Missouri for the construction of a railroad from St. Louis to such point on the western boundary of said state as may be designated by the authority of the state and in addition to the right of way the United States granted to Missouri for the purpose of aiding in the building of said railroad every alternate section of land designated by even numbers, for six sections in width on each side of said railroad; but in case it should appear that the United States have, when the line or route of said road should be definitely fixed by the authority aforesaid, sold any section or part of a section granted as aforesaid, to which right of pre-emption had attached, then the agent appointed by the governor of Missouri might select other lands in lieu of those sold or pre-empted provided such new selections should not be further than 15 miles from the line of road. By the act of June 5, 1862, the time for completion was extended ten years from that date.

The "Pacific Railroad" was incorporated by an act of the general assembly of Missouri, approved March 12, 1849. By an act of the general assembly of Missouri, approved December 25, 1852 (Sess. Acts 1852–3, p. 10), the grant of the United States by the act of

congress of June 10, 1852, was accepted by the state of Missouri and all the said lands so far as applicable to the construction of a railroad from St. Louis to the western boundary of the state, were granted to the Pacific railroad and were "vested in full and complete title to the said railroad" and said railroad was thereby authorized to lay out and construct a branch railroad from any point on its main line east of the Osage river to any point on the western boundary of the state, south of the Osage river, which it might select. By section 3, the railroad was required at its own expense to locate a branch and locate and select the lands granted by the act of congress, by an agent selected by it under the appointment of the governor, and subject to the approval of the secretary of the interior of the United States, "along the main line of said Pacific railroad from its commencement in the city of St. Louis, to the point on said main line, where the said southwestern branch shall diverge, and thence along said southwestern line or branch railroad to the western boundary [of the state] south of the Osage river." By the fourth section, it is provided that the Pacific railroad shall apply the lands granted as aforesaid or *the proceeds* thereof, to the construction of the said main line from its commencement in St. Louis to the point of divergence of the southwestern branch and to the said southwestern branch.

It was admitted on the trial, that the Pacific railroad duly accepted the provisions of these acts which, by their terms, were dependent on its acceptance. It was also admitted that said Pacific railroad (corporation) was duly organized as such corporation, prior to December 25, 1852; that the Pacific railroad was completed from the city of St. Louis, by way of Pacific, to the western boundary of the state, at Kansas

VOL. 121—24

City, in the year 1864; that the southwest branch of the Pacific railroad, from Pacific to the western boundary of the state, south of the Osage river, was completed not later than 1872; that the Pacific railroad (corporation) fully complied with the provisions of section 5 of the act of the general assembly of the state of Missouri, entitled: *"An act for the sale of the Pacific railroad, and to foreclose the state's lien thereon, and to amend the charter thereof,"* approved *March 31, 1868 (Acts 1868, p. 114)*, and that a deed of release, as therein provided for, was duly executed and delivered to said corporation; *that the land in controversy is a portion of the land granted to the state of Missouri by said act of congress approved June 10, 1852, and granted to the Pacific railroad by said act of said assembly approved December 25, 1852, and that said Pacific railroad duly selected and located said land prior to October 19, 1854; that said land is situated about three miles from the line of railway formerly known as the "Southwest branch of the Pacific railroad," and about twelve miles from the line of said Pacific railroad; that the southwest branch was completed through Franklin county, in or before the year 1860.*

Plaintiff offered in evidence the record of the office of the recorder of deeds of Franklin county, Missouri, of a deed of mortgage executed and delivered December 25, 1855, by the said Pacific railroad to the treasurer of the state of Missouri and his successors in office, and of the form of bonds and coupons secured by said mortgage, and of the acceptance of said conveyance by Alfred Morrison, treasurer of said state, all filed for record and recorded in said recorder's office June 16, 1856; which said mortgage conveys only the land authorized to be mortgaged by an act of said assembly entitled, "An act to secure the completion of certain railroads in this state," passed over the governor's veto,

December 10, 1855, and which mortgage, form of bonds and coupons are as prescribed in and by the twenty-fifth section of said last mentioned act; and was also executed by said treasurer in acceptance of the trust, as required by the twenty-sixth section of said act (Local Laws, 1855, pages 479, 480, 481, 482), and conveyed all lands granted to the Pacific railroad for the construction of the said southwest branch, of bonds proposed to be issued to an amount not exceeding $10,000,000.

Plaintiff also offered in evidence the record in said recorder's office of a deed of mortgage by said Pacific railroad, executed and delivered to John J. Anderson and Henry L. Patterson, June 21, 1856.

"All those tracts, pieces and parcels of land granted to said parties of the first part for the construction of a railroad, situated in townships 38, 39, 40, 41, 42, 43, 44, 45 and 46, which lie east of the range line that runs between the ranges of townships 1 and 2, west of the fifth principal meridian; also of those tracts, pieces and parcels of the land so granted to said parties of the first part in townships 37, 38, 39, 40, 41, 42, 43 and 44, that lie between a line parallel to said range line, between the ranges of township 1 and 2, west of the fifth principal meridian, and four sections of land distant west from said range line, and said range line, said tracts and parcels of land being situated in the counties of St. Louis, St. Charles, Jefferson, Washington, Franklin and Crawford, in the state of Missouri, containing the amount of one hundred and twenty-six thousand acres, and being parts of the same lands granted by an act of congress approved June 10, 1852, to the state of Missouri, to aid in the construction of a railroad from St. Louis to the western boundary of the state, and the same land granted by the state of Missouri to said parties of the first part by the eleventh-section of an act of

the general assembly approved the twenty-fifth day of December, 1852, entitled, 'An act to accept a grant of land made to the state of Missouri by the congress of the United States, to aid in the construction of certain railroads in this state, and to apply a portion thereof to the Pacific railroad,' excepting for the operation of this conveyance the right of way for the southwest branch of said Pacific railroad over any of the lands herein mentioned; to have and hold," etc., "in trust," etc.

Which said deed contained also a provision that until default made in payment the interest or principal of the said bonds, possession of the premises conveyed should remain with the Pacific railroad.

Plaintiff also introduced in evidence a deed of conveyance from Wm. M. Terry, sheriff of Franklin county, Missouri, to plaintiff, executed May 19, 1882, duly acknowledged May 22, 1882, conveying the premises sued for to plaintiff, pursuant to the sale thereof made to plaintiff by the sheriff on the sixth day of April, 1882, under and by virtue of an execution dated March 27, 1882, issued out of the office of the clerk of the circuit court of the city of St. Louis, upon a judgment for the sum of $2,000, rendered by the said circuit court of the city of St. Louis in favor of Charles Teslick, against the Pacific railroad, which execution was directed to said sheriff, and was delivered to him March 31, 1882. Said deed was delivered to plaintiff and filed for record May 23, 1882.

Plaintiff, on the trial, testified that before the St. Louis and San Francisco Railway Company sold the land sued for, he went to the office of that company in St. Louis to buy said land. That the person he found in the office examined some books in the office and told him the company didn't own the land, that it belonged to the Pacific railroad company. That he then went to the office of the Pacific railroad company in St. Louis,

and that the person he found in the office there said the Pacific railroad company owned three hundred and twenty acres there, and wanted to sell him the three hundred and twenty acres.

Plaintiff also offered evidence tending to show that no map, plat or other designation of the lands selected by the Pacific railroad under said act of congress, approved June 10, 1852, and under said act of said general assembly approved December 25, 1852, showing what particular portions of said lands were for the main line of the Pacific railroad, and what particular lands were for the southwest branch of said Pacific railroad, is or ever was filed or deposited in either the office of the secretary of state or the register of lands of the state of Missouri, and that no evidence could be found in either of said offices tending to show what portion of said lands were appropriated for the main line or for the southwest branch of the Pacific railroad.

Defendant, to maintain his title, offered in evidence the record of a deed from the state of Missouri to John C. Fremont, executed and delivered June 14, 1866, by Thomas C. Fletcher, governor, pursuant to the eighth section of an act of the legislature, entitled "An act to provide for the sale of certain railroads and property," etc., approved February 19, 1866 (Acts of 1865–6, p. 111, sec. 8), conveying to said Fremont all lands granted by said act of December 25, 1852, to the Pacific Railroad Company for the construction of said southwest branch, describing the same only in general terms as land so granted for construction of said southwest branch.

Also, the record of a deed from John C. Fremont to the Southwest Pacific Railroad Company, executed and delivered September 15, 1866, purporting to convey to said Southwest Pacific Railroad Company, the land conveyed to Fremont by the said deed to him,

describing the same only in the like general terms as land so granted for the construction of said southwest branch.

Also the record of a deed from the South Pacific Railroad Company to the Atlantic & Pacific Railroad Company, executed and delivered October 26, 1870, conveying the lands so granted for construction of said southwest branch, or by words of description referring to the same as lands so granted for construction of the southwest branch.

Also the record of a deed executed and delivered November 2, 1876, by Buckley and Armstrong, receivers of the Atlantic & Pacific Railroad Company, to Wm. F. Buckley, conveying the said lands granted to aid the construction of the said southwest branch, describing the same only as lands so granted.

Also a deed of record of conveyance from Buckley to the St. Louis & San Francisco Railway Company, executed and delivered November 2, 1876, conveying the land conveyed by said receivers' deed, and by like general description only.

Also a quitclaim deed of conveyance from the St. Louis & San Francisco Railroad Company to respondent, executed and delivered January 23, 1884, purporting to convey the land sued for, by its proper description ("northeast quarter of northeast quarter, section 20, township 42, range 1 west"), to defendant with special covenant of warranty against persons claiming the same under the St. Louis & San Francisco Railroad Company.

Plaintiff asked the court to instruct as follows:

"1. The evidence in this case shows that the land in question was (under the act of congress read in evidence, and under certain acts of the general assembly relating to lands granted to the state of Missouri by the congress of the United States to aid in the con-

struction of certain railroads) vested in fee in the Pacific railroad, a corporation of the state of Missouri, and, unless the title to said land passed out of said corporation prior to the execution and delivery of the sheriff's deed read in evidence in this case, then the fee simple title to said land is in plaintiff, and upon the issue as to whether said fee simple title passed out of said corporation prior to the execution and delivery of said sheriff's deed, the burden of proof to establish that said title did, as to the particular land here sued for, so pass out of said corporation, is upon defendant.''

The court refused the instruction, and plaintiff duly excepted.

At the request of the defendant, the court gave the following instructions:

''1. The court declares the law to be that the evidence in this case shows that under the act of congress of June 10, 1852, and under certain acts of the assembly of the state of Missouri, relating to lands granted to the state of Missouri by said act of congress, to aid in the construction of railroads, the title to the lands in controversy became vested in the Pacific Railroad, for the use and benefit of the southwest branch, and that unless the title to said land passed out of or from the said Pacific Railroad, either by deed or forfeiture, prior to the execution and delivery of the sheriff's deed to plaintiff, then the title in fee to said lands vests in plaintiff, and the plaintiff herein is entitled to recover.

''2. The act of congress approved June 10, 1852, and the several acts of the legislature of the state of Missouri, read in evidence, and the deeds introduced in evidence by defendant, are sufficient in law to convey to defendant the legal title and the right of possession of, in and to the land in controversy, pro-

vided that it appears from the evidence that said lands were selected and located by the Pacific Railroad, for the use and benefit of the southwest branch, and are situated within the belt of lands granted for the benefit of the southwest branch railroad, at some distance west of the town of Franklin (now city of Pacific), Missouri; in which case, if the court so believes, the finding must be for defendant.''

To the giving of each of which instructions plaintiff duly excepted.

Section 6, of the act of the general assembly of December 25, 1852, provided that ''the said company (the Pacific railroad) shall within one year after the said southwestern branch railroad shall have been located, cause to be made a map and profile thereof, *and a map of the land located, for the use of such branch road,* embracing also the main line of the Pacific railroad, from its connection with said southwestern branch to the eastern terminus thereof, and file the same in the office of the secretary of state; and also maps of the parts thereof located in the different counties, and cause the same to be recorded in the office for recording deeds in the counties respectively in which said parts of said road may be located.''

I.   The claim of plaintiff is, first, that by the act of congress of June 10, 1852, the title to this land vested in the state of Missouri, as a conveyance *in præsenti* as soon as the route of the main line and southwestern branch were definitely located, and the effect of the act of the general assembly of the state of Missouri, approved December 25, 1852, was to vest the title in the Pacific railroad, to the even numbered sections of land lying within six miles of the line of railroad composed of the main line of the Pacific railroad from St. Louis to Franklin (now Pacific) and of the southwest branch from Pacific to the western boundary of the state,

owned by the United States at the time said line was definitely fixed by authority of the state. U. S. Stats. at Large, vol. 10, pp. 8, 9, 10; Laws of Mo. 1852–3, pp. 10–15.

The effect of the act of congress of June 10, 1852, was judicially determined by this court in *Wright v. Gish*, 94 Mo. 110, in which case it was held that the act was a grant *in præsenti* and passed the title to the state immediately upon the definite location of the road. The judgment of this court in *Wright v. Gish*, is in harmony with the previous decisions of the supreme court of the United States in *Schulenberg v. Harriman*, 21 Wall. 44, and *Railroad v. U. S.*, 92 U. S. 733. In *Whitney v. Morrow*, 112 U. S. 693, it was said a direct legislative grant of public lands is the highest muniment of title and is not strengthened by a subsequent patent of the same land.

It was conceded on the trial of this cause that the Pacific railroad was definitely located and completed to the western boundary of the state within the time prescribed by the acts of congress of 1852 and 1862, and that the southwest branch was also definitely located and completed before 1872, and within the time limited by congress for said grant to revert, so that no claim of a forfeiture to the United States is, or can be asserted. It is also conceded that the land in controversy is a portion of the land granted to the state of Missouri and by the state granted to the Pacific railroad, and that it was selected and located according to the act of congress and that the southwest branch was completed through Franklin county in 1860. So that under the decisions of this court and the supreme court of the United States, the legal title became vested in the Pacific railroad, and the title of the railroad having passed to plaintiff, he can maintain ejectment, unless the title of the railroad was forfeited or affected by a

failure to file maps as required by the sixth section of
the act approved December 25, 1852.

Considering these objections in their reverse order:
There are no words in said section 6 to restrain or
limit the effect of the grant to the Pacific railroad, and
in the absence of such, it was held in *Schulenberg v.
Harriman, supra,* that the words imported an immedi-
ate transfer of the title although subsequent proceedings
were required to give precision to the title and attach
it to specific tracts.    Here the whole title was vested in
the Pacific railroad.    There were no conditions prece-
dent to vesting the title save that of the definite location
of the line, though there was a direction by the statute
to map the land located for the use of the branch road,
and that for the main line within a year after its loca-
tion.    These maps were not conditions precedent to
the vesting of the title, as between the United States
and the state, or between the state and the railroad.

Defendant relies upon *Baker v. Gee,* 1 Wall. 333,
and *Railroad v. Lindell's Heirs,* 39 Mo. 330, but it
seems to us that those cases rest upon a different state
of facts from this.    In *Baker v. Gee,* the contest was
between a pre-emptor, and a purchaser from the Hanni-
bal & St. Joseph railroad.    The general assembly
of Missouri in accepting the act of congress for the
Hannibal & St. Joseph (session acts 1852-3, p. 15),
required that the lands should be selected by the com-
pany under the direction of the governor and that
a copy of the location of the road should be certified to
the local land offices and general land office at
Washington.    By section 5 of the act, a pre-emption
right was granted at a specified price to settlers in
actual occupancy prior to the act of June 10, 1852, and
to a certain extent on any land embraced in the grant
on certain conditions, among which was one that the
pre-emptor *"should within four months from the date of*

*the location of the lands"* file a notice to the road, of his pre-emption. Gee claimed to have a pre-emption under this act and on the third day of January, 1854, commenced his proceedings to establish his right to purchase. The company's grantee, Baker, denied his right, claiming that Gee should have given his notice within *four months of the location of the road*, and it was held that the pre-emption right should prevail, but the title of the state and the road was conceded. It vested on the location of the road. Both parties invoked the benefit of the act of 1852.

In the *Lindell case*, the lands had not been certified to the state under the act of 1854; besides they were reserved from the grant of the act of 1852, as they were covered by a valid New Madrid location. The state never acquired a title, and consequently the railroad could derive none from it. Here the title of the state is conceded, as also the grant to the railroad, and it is insisted by defendant that because it did not subsequently file maps designating which of its lands it had located for its main line and which for its branch, that it had not shown a legal title in itself. The *Lindell case*, is so unlike this in its facts that it can not be applied here, and if it holds what defendant claims for it, is not in harmony with *Wright v. Gish, supra.* Here both parties are asserting title under the act of 1852. Defendant insists that the grant by congress was limited for the purpose of constructing a railroad, and that the lands must be "exclusively applied in the construction of that road for which it was granted and selected," and that this land was located for the southwest branch. The state in its act of acceptance fully complied with the act of congress in granting the lands for the purpose for which it received them. The vice of defendant's contention is that he seeks to make *two railroads* of the Pacific railroad, which at that time

was only one. The language of the act of congress refers to the fact that two roads were to be constructed; one "from the town of Hannibal to the town of St. Joseph," the other, "from the city of St. Louis to the western boundary of the state," and the lands granted to *each* were to be applied exclusively to the particular road *of these two*, for which they were granted. Neither the act of congress nor the act of the general assembly of Missouri recognized the main line and the southwestern branch as distinct roads. On the contrary, the grant was to the Pacific railroad, alone.

It is very clear that, when plaintiff closed, he had made a *prima facie case* as to the legal title, as the lands clearly fell within the terms of the grant, and selection, by the Pacific railroad. The direction to file the maps contained no words of forfeiture, re-entry or reverter, and forfeitures and conditions subsequent are not favored in the law. *Studdard v. Wells*, 120 Mo. 25. Having traced the title into the Pacific railroad and the acquisition of that title by his sheriff's deed, plaintiff was not required to prove the negative, that the road had not lost its title, because of subsequent acts of the legislature in foreclosing the state's lien on the branch.

The plaintiff is required to recover on the strength of his own title, but when he makes a *prima facie* case, he is entitled to recover, unless defendant has shown a better title. The court erred in not so instructing for plaintiff and as there was no evidence by the maps or *aliunde*, showing this land was located for the branch and was subsequently forfeited to the state, the general words of description in defendant's deeds were inoperative and it becomes unnecessary to discuss the effect of the acts looking to a foreclosure, and the court erred in giving the two instructions for defendant to the effect that the title vested in the Pacific railroad for the use

and benefit of the branch. The judgment is reversed and cause remanded for new trial. BURGESS, J., concurs. SHERWOOD, J., not voting.